1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN J. COLMAR,

11              Plaintiff,                    No. CIV S-09-0742 DAD

12        v.

13   JACKSON BAND OF MIWUK          ORDER
     INDIANS, DBA JACKSON
14   RANCHERIA CASINO, HOTEL &
     CONFERENCE CENTER,
15
                Defendant.
16   _____/

17              This matter came before the court on June 3, 2011, for hearing of defendant's

18   motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(1) (Doc. No. 22)

19   and defendant's second motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil

20   Procedure 12(b)(1) (Doc. No. 23).  The parties have previously consented to Magistrate Judge

21   jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. Nos. 9 and 10.)  Attorney John Bridges

22   appeared on behalf of plaintiff Steven Colmar and attorney Jill Peterson appeared on behalf of

23   defendant the Jackson Rancheria Band of Miwuk Indians.  Oral argument was heard and

24   defendant's motions were taken under submission.  For the reasons set forth below, defendant's

25   motion for reconsideration will be granted in part, and defendant's second motion to dismiss will

26   be granted.

                                                   1

DEFENDANT'S MOTION FOR RECONSIDERATION

On March 17, 2009, plaintiff filed a complaint alleging that the defendant unlawfully discriminated against him based on his age in violation of 29 U.S.C. §§ 621-634. (Complaint (Doc. No. 1) at 2-5.)  On May 22, 2009, defendant filed its first motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 8).  On March 31, 2011, the court issued an order denying defendant's first motion to dismiss.  (Doc. No. 21.)

Defendant, the Jackson Rancheria Band of Miwuk Indians ("Tribe"), now moves pursuant to Federal Rule of Civil Procedure 60(b)(1) for reconsideration of this court's March 31, 2011 order denying defendant's May 22, 2009 first motion to dismiss.  (Def.'s MTR (Doc. No. 22) at 1-2.)  In that order the court stated:

> Instead, the filing of plaintiff's complaint in this action was subject to 29 U.S.C. § 626 (d)(1)(B), which provides that a civil action may be commenced within 300 days after the occurrence of the alleged unlawful practice.  Plaintiff timely filed his complaint in this case just prior to the expiration of that 300-day limitation period.

(Order (Doc. No. 21) at 13.)

In moving for reconsideration, counsel for defendant observes that 29 U.S.C. § 626 (d)(1)(B) actually provides that the plaintiff in an Age Discrimination in Employment Act ("ADEA") case has 300 days after the alleged unlawful practice to file a charge with the Equal Employment Opportunity Commission ("EEOC"), not a complaint in a civil action.[1]  (Def.'s

---

[1]  Title 29 U.S.C. § 626(d)(1)(B) provides that:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission.  Such a charge shall be filed–
>
> ***
>
> (B) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30

2

1   MTR at 3.)  Based on this error in the court's order, defendant seeks reconsideration and for the

2   court upon reconsideration to grant defendant's motion to dismiss filed May 22, 2009.  (Id. at 5.)

3           Counsel for plaintiff concedes that 29 U.S.C. § 626 (d)(1)(B) actually provides

4   that the plaintiff in an ADEA case has 300 days after the alleged unlawful practice occurred to

5   file a charge with the EEOC, and not a complaint in a civil case.  Nonetheless, plaintiff argues

6   that defendant's motion to dismiss filed May 22, 2009, should still be denied because the

7   misstatement in the court's March 31, 2011 order is "trivial and does not supersede the equitable

8   doctrines behind both the ADEA and this Court's Order."  (Pl.'s Opp.'n. to MTR (Doc. No. 24)

9   at 1-3.)

10          Federal Rule of Civil Procedure 60(b) permits relief from a final judgment or

11  order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2)

12  newly discovered evidence which by due diligence could not have been discovered in time to

13  move for a new trial; (3) fraud, misrepresentation, or other misconduct by an adverse party; (4)

14  void judgment; (5) satisfaction, release, or discharge of the judgment; or (6) "any other reason

15  justifying relief from the operation of the judgment."  A court may correct an error of law under

16  Rule 60(b)(1).  Liberty Mut. Ins. Co. v. Equal Emp't Opportunity Comm'n, 691 F.2d 438, 441

17  (9th Cir. 1982.  See also Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350

18  (9th Cir. 1999) (acknowledging that "a district court can correct its own mistake" under Rule

19  60(b)).

20          Here, it is apparent to the court and to the parties that the court did indeed misstate

21  the statute of limitations found in 29 U.S.C. § 626 (d)(1)(B) in the court's March 31, 2011 order

22  denying defendant's first motion to dismiss.  Plaintiff's motion for reconsideration of the court's

23  March 31, 2011 order will therefore be granted and that order will be vacated.

24  /////

25  _____

26          days after receipt by the individual of notice of termination of
        proceedings under State law, whichever is earlier.

3

1    However, the court has now reviewed defendant's second motion to dismiss filed

2    April 29, 2011.  Because defendant's second motion to dismiss is both persuasive and

3    dispositive, the court need not reach the merits of the first motion to dismiss filed on May 22,

4    2009.

5                        DEFENDANT'S SECOND MOTION TO DISMISS

6           Defendant now seeks dismissal of plaintiff's complaint in this action pursuant to

7    Federal Rule of Civil Procedure 12(b)(1) on the grounds that this court lacks jurisdiction over the

8    subject matter of this suit.  Specifically, defendant argues that subject matter jurisdiction is

9    lacking over plaintiff's ADEA claim because defendant is a federally recognized Indian Tribe

10   that is immune from suit pursuant to tribal sovereign immunity.[2]  (Def.'s MTD (Doc. No. 23) at

11   3-8.)

12          In opposing defendant's motion, plaintiff argues that the Tribe has waived its

13   immunity.  In this regard, plaintiff asserts that the Tribe waived its immunity through an official

14   act of the tribal government by stating in Article X of its Tribal Constitution that:

15              Neither the Tribal Council nor the General Council shall exercise
                any powers in such a manner as to deprive any person of rights
16              secured by this Constitution or applicable laws of the United
                States, including the provisions of the Indian Civil Rights Act, 25
17              U.S.C. § 1302.

18   (Pl.'s Opp.'n. to MTD (Doc. No. 25) at 2-3.)

19          In reply, defendant argues that Article X of the Tribal Constitution does not

20   mention the Tribe's sovereign immunity nor does it waive that immunity but instead merely sets

21   forth limits on the Tribal Council with regard to individuals governed by the Tribal Constitution.

22

23          [2]  Defendant is included on the Federal Register's list of recognized Indian Tribes.  See 67
     Fed. Reg., p. 46328-01.  "[T]he inclusion of a group of Indians on the Federal Register list of
24   recognized tribes would ordinarily suffice to establish that the group is a sovereign power entitled
     to immunity from suit."  Cherokee Nation v. Babbitt, 117 F.3d 1489, 1499 (D.C. Cir. 1997).
25   Moreover, plaintiff acknowledges in his complaint that the defendant is "a business entity . . .
     owned and operated by the Jackson Rancheria Band of Miwuk Indians, a sovereign state."
26   (Compl. (Doc. No. 1) at 2.)

                                                    4

1  In addition, defendant argues that waiver of the Tribe's sovereign immunity is actually addressed

2  in Article VI, Section 2 of the Tribal Constitution, which specifies that the Tribe's sovereign

3  immunity may only be waived if such waiver is clearly stated in writing and approved by the

4  Tribal Council pursuant to a duly called meeting.  (Def.'s Reply (Doc. No. 27) at 2-5.)

5  According to defendant, such conditions have not been met.

6                    LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION

7           Defendant's motion to dismiss has been brought pursuant to Federal Rule of Civil

8  Procedure 12(b)(1).  Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the

9  defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or

10  of specific claims alleged in the action.  "A motion to dismiss for lack of subject matter

11  jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking

12  motion' attacking the existence of subject matter jurisdiction in fact."  Thornhill Publ'g Co. v.

13  Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  When a Rule 12(b)(1) motion

14  attacks the existence of subject matter jurisdiction in fact, no presumption of truthfulness

15  attaches to the plaintiff's allegations.  Id.  "[T]he district court is not restricted to the face of the

16  pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

17  disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560

18  (9th Cir. 1988).  Plaintiff has the burden of proving that jurisdiction does in fact exist.  Thornhill

19  Publ'g Co., 594 F.2d at 733.

20                                       ANALYSIS

21  I.  Sovereign Immunity

22           "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign

23  authority over their members and territories."  Oklahoma Tax Comm'n v. Citizen Band

24  Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509 (1991).  See also Santa Clara Pueblo

25  v. Martinez, 436 U.S. 49, 56 (1978) ("As separate sovereigns pre-existing the Constitution, tribes

26  have historically been regarded as unconstrained by those constitutional provisions framed

                                            5

specifically as limitations on federal or state authority.").  "Sovereign immunity limits a federal court's subject matter jurisdiction over actions brought against a sovereign.  Similarly, tribal immunity precludes subject matter jurisdiction in an action against an Indian tribe."  Alvarado v. Table Mountain Rancheria, 509 F.3d 1008, 1015-16 (9th Cir. 2007).

"Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe."  Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 725 (9th Cir. 2008).  See also Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998) ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."); Nanomantube v. Kickapoo Tribe in Kansas, 631 F.3d 1150, 1152 (10th Cir. 2011) ("As a dependent sovereign entity, an Indian tribe is not subject to suit in federal or state court unless the tribe's sovereign immunity has been either abrogated by Congress or waived by the tribe.").  "There is a strong presumption against waiver of tribal sovereign immunity." Demontiney v. U.S. ex rel. Dept. of Interior, Bureau of Indian Affairs, 255 F.3d 801, 811 (9th Cir. 2001).  "Any waiver must be unequivocal and may not be implied."  Kescoli v. Babbitt, 101 F.3d 1304, 1310 (9th Cir. 1996).  See also Santa Clara Pueblo, 436 U.S. at 58 ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed.").  Similarly, congressional abrogation of sovereign immunity may not be implied and must be "unequivocally expressed" in "explicit legislation."  Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1056 (9th Cir. 2004).  "The plaintiff bears the burden of showing a waiver of tribal sovereign immunity."  Ingrassia v. Chicken Ranch Bingo and Casino, 676 F. Supp.2d 953, 956-57 (E.D. Cal. 2009).

/////

/////

/////

/////

1    Here, counsel for plaintiff states that while he "found no direct Congressional

2 waiver in any statute or regulation, it is clear that defendant has waived its immunity."[3]  (Pl.'s

3 Opp.'n. to MTD (Doc. No. 25) at 1.)  Plaintiff's claim of a clear and unequivocal waiver of

4 sovereign immunity by defendant is based solely upon the language of Article X of defendant's

5 Tribal Constitution, which reads:

6              Neither the Tribal Council nor the General Council shall exercise
               any powers in such a manner as to deprive any person of rights
7              secured by this Constitution or applicable laws of the United
               States, including the provisions of the Indian Civil Rights Act, 25
8              U.S.C. § 1302.

9 (Id. at 2-3.)

10    This language merely acknowledges that the Tribal Council and General Council

11 will not deprive anyone of rights secured by applicable federal laws.  In this regard, the passage is

12 nothing more than an acknowledgment of the Tribe's agreement to comply with federal law.

13 However, a tribe's agreement to comply with federal law, without more, does not constitute an

14 unequivocal waiver of tribal sovereign immunity.  See Nanomantube, 631 F.3d at 1153 ("We

15 thus hold that the Tribe's agreement to comply with Title VII, like similar agreements to comply

16 with other federal statutes, may convey a promise not to discriminate, but it in no way constitutes

17 an express and unequivocal waiver of sovereign immunity and consent to be sued in federal

18 court."); Allen v. Gold Country Casino, 464 F.3d 1044, 1047 (9th Cir. 2006) (finding that the

19 Tribe, which owned and operated the casino, did not clearly waive its immunity by stating in an

20 employee handbook that employees could be terminated "for any reason consistent with

21 applicable state or federal law," or when it stated in an Employee Orientation Booklet that it

22 would "practice equal opportunity employment and promotion regardless of race, religion, color,

23 creed, national origin . . . and other categories protected by applicable federal laws.");

24 _____

25    [3] With respect to congressional abrogation of the Tribe's immunity, it has been held that
      the ADEA, the statute under which plaintiff brings this action, does not abrogate tribal sovereign
26 immunity.  See Garcia v. Akwesasne Housing Authority, 268 F.3d 76, 85-86 (2nd Cir. 2001).

1   Demontiney, 255 F.3d at 814 ("Demontiney provides no support for the proposition that the

2   Tribe's incorporation of [the Indian Civil Rights Act] into its constitution and bylaws shows an

3   intent to waive sovereign immunity in federal court."); Hagen v. Sisseton-Wahpeton Community

4   College, 205 F.3d 1040, 1044 n.2 (8th Cir. 2000) ("Nor did the College waive its immunity by

5   executing a certificate of assurance with the Department of Health and Human Services in which

6   it agreed to abide by Title VI of the Civil Rights Act of 1964."); cf. C&L Enterprises, Inc. v.

7   Citizen Band of Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 423 (2001) (concluding

8   that "under the agreement the Tribe proposed and signed, the Tribe clearly consented to

9   arbitration and to the enforcement of arbitral awards in Oklahoma state court" thereby waiving

10   sovereign immunity).

11           Article X of defendant's Tribal Constitution does not mention the Tribe's

12   sovereign immunity, the waiver of that immunity or the scope of any such waiver.  Under

13   plaintiff's interpretation Article X waives the Tribe's sovereign immunity in its entirety and

14   without limitation.  However, Article VI, Section 2 of the Tribal Constitution specifically

15   addresses the Tribe's sovereign immunity and waiver of that immunity, stating in relevant part,

16   that:

17           In particular, the Tribal Council is authorized to negotiate waivers
             of the Band's sovereign immunity from unconsented lawsuit, but
18           no such waiver shall be effective unless the intent to so waive
             immunity, and the extent to which it shall be waived, is clearly
19           stated in writing and approved by the Tribal Council pursuant to a
             duly called meeting.
20

21   (Def.'s MTD, Ex. A (Doc. No. 23-4) at 10.)  Here, plaintiff has identified no asserted written

22   waiver of the Tribe's immunity, other than Article X.  Any suggestion that the Tribe intended to

23   waive its sovereign immunity through the language of Article X is unpersuasive because such an

24   interpretation would render Article VI, Section 2 of the Tribal Constitution unnecessary and

25   contradictory.

26   /////

8

For the reasons noted above, the court rejects plaintiff's argument that Article X of defendant's Tribal Constitution unequivocally waived the Tribe's sovereign immunity.  The court finds that defendant is an Indian tribe entitled to sovereign immunity and that the Tribe's immunity has not been abrogated by Congress or unequivocally waived by the Tribe itself.  This court's subject matter jurisdiction over this action is therefore precluded based on the defendant Tribe's sovereign immunity.[4]  Accordingly, defendant's second motion to dismiss filed April 29, 2011 is granted.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's April 29, 2011 motion for reconsideration (Doc. No. 22) is granted in part;

2. The court's March 31, 2011 order (Doc. No. 21) is vacated;

3. Defendant's April 29, 2011 second motion to dismiss (Doc. No. 23) is granted;

4. Defendant's May 22, 2009 first motion to dismiss (Doc. No. 8) is denied as moot;

5. Plaintiff's March 17, 2009 complaint (Doc. No. 1) is dismissed; and

6. This matter is closed.

DATED: June 13, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
orders.consent/colmar0742.o.mtd2

---

[4] Having found that sovereign immunity precludes the court's exercise of subject matter jurisdiction, the court need not address plaintiff's argument that the ADEA applies to the Tribe. See E.E.O.C. v. Karuk Tribe Housing Authority, 260 F.3d 1071, 1075 (9th Cir. 2001) ("As a threshold matter, we first address the Tribe's contention that it enjoys sovereign immunity from the EEOC's inquiry and thus from this lawsuit.").